UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) BILLY ROBERTSON, Individually and For Others Similarly Situated | * * * | Case No.  23-cv-00234-CVE-CDL |
| v. | * * | Jury Trial Demanded |
| 2) CALYX ENERGY III, LLC and | * | Collective Action |
| 3) RIVERSIDE MIDSTREAM WATER RESOURCES, LLC | * * | |

**COLLECTIVE ACTION COMPLAINT**

1. Plaintiff, Billy Robertson ("Robertson") individually and on behalf of all others similarly situated, brings this collective action against Defendants, Calyx Energy III, LLC and Riverside Midstream Water Resources, LLC (collectively referred to as "Defendants"), and alleges as follows:

2. Plaintiff brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.§201, *et seq.*, to recover unpaid overtime compensation under §216(b) individually and as a collective action on behalf of all current and former persons who worked for Defendants within the last three (3) years who were classified as an independent contractor and were not paid overtime for all hours worked in excess of forty (40) in a workweek as required by §207(a) of the FLSA.

3. Plaintiff worked for Defendants as an operator in Defendants' oilfield services and facilities business.

4. Plaintiff and the Collective Members (as defined below) regularly worked for Defendants in excess of forty (40) hours each week but were not paid overtime.

5. Instead of paying overtime as required by the FLSA, Defendants improperly classified Plaintiff and the Collective Members as independent contractors and paid them a daily rate with no overtime compensation.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

7. This Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff asserts claims under the FLSA, 29 U.S.C. § 291, *et seq.*, to recover unpaid overtime under 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants' principal places of business are in this district, Defendants conduct substantial business in this district, and a substantial part of the events giving rise to the claims sued upon herein occurred within this district.

## THE PARTIES

9. Plaintiff, Billy Robertson, is an individual, above the age of majority, domiciled in Waleetka, Oklahoma. Plaintiff worked for Defendants from October 2021 until April 2023.

10. Plaintiff's consent to be a party plaintiff is attached as Exhibit 1.

11. Defendant, Calyx Energy III, LLC is a Delaware limited liability company with its principal place of business located in Tulsa, Oklahoma, and may be served with process through its registered agent, CT Corporation System, 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.

12. Defendant, Riverside Midstream Water Resources, LLC, is a Texas limited liability company with its principal place of business located in Tulsa, Oklahoma and may be served with process through its registered agent, CT Corporation System, 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.

## COVERAGE UNDER THE FLSA

13. At all relevant times, Defendants both were and are employers of Plaintiff and the Collective Members within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

14. At all relevant times, Defendants were and are an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

15. At all relevant times, Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

16. In each of the past three (3) years, Defendants' annual gross volume of sales has exceeded $1,000,000 (exclusive of excise taxes at the retail level).

17. At all relevant times, Plaintiff and the Collective Members were employees engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. §207.

18. Defendants, Plaintiff and the Collective Members used cell phones, computers, materials and equipment that were manufactured in and/or shipped from states and/or countries other than Oklahoma in performing their job duties. Further, Defendants utilized the internet, computers and cell phones in their business activities and accepted checks, bank wires, credit cards and electronic payments and processed other transactions from customers through interstate banks and financial institutions, as well as performing work activities in states other than the State of Oklahoma, all of which constitutes interstate commerce.

## FACTS

19. Defendants acquire, develop, operate and sell oil and gas assets in the Mid-Continent region, and operate an integrated water pipeline system as part of their operations.

20. To achieve their business objectives, Defendants hire workers such as Plaintiff and the Collective Members to work in their operations.

21. At all relevant times, Defendant Riverside Midstream Water Resources, LLC is and was a wholly owned subsidiary of Defendant Calyx Energy III, LLC.

22. Defendants jointly exercised supervisory and managerial responsibility and substantial control over the terms and conditions of Plaintiff and the Collective Members work and employment, including, but not limited to, assigning work, hiring and firing, classification as independent contractors and failure to pay overtime.

23. Plaintiff and the Collective Members worked for Defendants on a day rate basis (without overtime pay) and were classified as independent contractors.

24. While exact job titles and job duties may differ, these workers were subjected to the same or similar illegal pay practices for similar work.

25. Defendants uniformly failed to pay overtime for the hours Plaintiff and the Collective Members worked over forty (40) in a workweek.

26. Throughout his employment, Defendants classified Plaintiff as an independent contractor and paid him on a day rate basis.

27. Plaintiff was paid $200 per day if he worked a day shift, and $225 per day if he worked a night shift. Each shift was twelve (12) hours.

28. Defendants directed Plaintiff to work twelve (12) or more hours a day for as many as fourteen (14) days in a row.

29. Plaintiff and the Collective Members worked for Defendants under their day rate pay scheme.

30. Plaintiff and the Collective Members did not receive a salary.

31. If Plaintiff and the Collective Members did not work, they did not get paid.

32. The Collective Members received a day rate like Plaintiff.

33. Plaintiff and the Collective Members did not receive overtime pay.

34. Plaintiff and the Collective Members often worked over 40 hours in a workweek.

35. Plaintiff and the Collective Members were paid their day rate regardless of the number of hours they worked in a week, even when they worked more than forty (40) hours.

36. Plaintiff and the Collective Members did not receive guaranteed weekly compensation from Defendants irrespective of the number of days worked (i.e., the only compensation they received was the day rate they are assigned).

37. Plaintiff and the Collective Members worked in accordance with the schedule set by Defendants.

38. Plaintiff's work schedule was typical of the Collective Members' work schedule.

39. Defendants controlled Plaintiff's and the Collective Members' pay.

40. Defendants controlled Plaintiff's and the Collective Members' work.

41. Plaintiff and the Collective Members were required to follow Defendants' work policies and procedures.

42. Plaintiff and the Collective Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

43. The work Plaintiff and the Collective Members performed was an essential part of Defendants' core business.

44. During Plaintiff's and the Collective Members' employment, Defendants exercised control over all aspects of their jobs.

45. Defendants did not require any substantial investment by Plaintiff or the Collective Members for them to perform their work.

46. Defendants controlled Plaintiff and the Collective Members' opportunity for profit and loss by dictating the days and hours they worked and the rate they were paid.

47. Defendants controlled all the significant and meaningful aspects of the job duties performed by Plaintiff and the Collective Members.

48. Defendants exercised control over the hours and locations Plaintiff and the Collective Members worked, tools and equipment used, and rates of pay received.

49. No real investment was required of Plaintiff and the Collective Members to perform their jobs.

50. More often than not, Plaintiff and the Collective Members utilized equipment provided by Defendants to perform their job duties.

51. Defendants made large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Plaintiff and the Collective Members worked.

52. Plaintiff and the Collective Members did not incur operating expenses like rent, payroll, or marketing in performing their jobs for Defendants.

53. Plaintiff and the Collective Members were economically dependent on Defendants during their employment.

54. Defendants set Plaintiff's and the Collective Members' rates of pay, work schedule, and effectively prevented (or prohibited) them from working other jobs for other companies while they were working for Defendants.

55. Defendants directly determined Plaintiff's and the Collective Members' opportunity for profit and loss.

56. Plaintiff's and the Collective Members' earning opportunity was based on the number of days Defendants scheduled them to work.

57. The daily and weekly activities of Plaintiff and the Collective Members were routine and largely governed by standardized plans, procedures, and checklists created by Defendants.

58. Virtually every job function of Plaintiff and the Collective Members was pre-determined by Defendants, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

59. Plaintiff and the Collective Members were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Defendants' policies, procedures, and directives.

60. Plaintiff and the Collective Members were not employed by Defendants on a project-by-project basis.

61. Plaintiff and the Collective Members were not free to subcontract with others to perform their work for Defendants who required Plaintiff and the Collective Members to personally perform their job duties.

62. All Collective Members performed similar duties in furtherance of Defendants' business.

63. At all relevant times, Defendants maintained control over Plaintiff and the Collective Members via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

64. Plaintiff and the Collective Members did not have the power to hire or fire any employees.

65. Plaintiff's working relationship with Defendants was similar to Defendants' relationship with the Collective Members.

66. Defendants knew Plaintiff and the Collective Members worked more than forty (40) hours in a week.

67. Defendants knew, or showed reckless disregard for, whether Plaintiff and the Collective Members were entitled to overtime under the FLSA.

68. Defendants willfully violated the FLSA.

### CAUSE OF ACTION - FLSA VIOLATIONS

69. By failing to pay Plaintiff and the Collective Members overtime at one-and-one-half times their regular rates, Defendants violated the FLSA's overtime provisions.

70. Defendants owe Plaintiff and the Collective Members the difference between the rate actually paid and their proper overtime rate.

71. By paying Plaintiff and the Collective Members a day rate with no overtime compensation, Defendants violated (and continue to violate) the FLSA's requirement that they pay employees at 1 and ½ times their regular rates for hours worked in excess of forty (40) in a workweek.

72. As a result of this policy, Plaintiff and the Collective Members did not receive overtime as required by the FLSA.

73. Defendants' uniform compensation scheme of paying Plaintiff and the Collective Members a day rate with no overtime compensation for weeks in which these workers work over forty (40) hours is a violation of the FLSA. 29 U.S.C. § 207(a) and (e).

74. Because Defendants knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Defendants owe these wages for at least the past three (3) years.

75. Defendants are liable to Plaintiff and the Collective Members for an amount equal to all unpaid overtime wages as liquidated damages.

76. Plaintiff and the Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COLLECTIVE ACTION ALLEGATIONS

77. Plaintiff incorporates all previous paragraphs and alleges that the illegal pay practices Defendants imposed on Plaintiff were likewise imposed on the Collective Members.

78. The Collective of similarly situated individuals sought to be conditionally certified for purposes of Notice pursuant to 29 U.S.C. § 216(b) is defined as:

> All persons who worked for Calyx Energy III, LLC and/or Riverside Midstream Water Resources, LLC, who were classified as independent contractors and were paid a day rate and no overtime within the last three (3) years. ("Collective Members")

79. The Plaintiff and the Collective Members were victimized by Defendants' pattern, practice, and policy which is a willful violation of the FLSA.

80. The Plaintiff and the Collective Members were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

81. Based on his experiences and tenure with Defendants, Plaintiff is aware that Defendants' illegal practices were imposed on the Collective Members.

82. Defendants' failure to pay overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Collective Members.

83. Plaintiff's experiences are therefore typical of the experiences of the Collective Members.

84. The specific job titles or precise job locations of the Collective Members do not prevent collective treatment.

85. Plaintiff has no interests contrary to, or in conflict with, the Collective Members.

86. A collective action is superior to other available means for fair and efficient adjudication of the issues and claims in this lawsuit.

87. Absent this action, many Collective Members likely will not obtain redress of their losses and Defendants will reap the unjust benefits of violating the FLSA.

88. Defendants treated Plaintiff and the Collective Members as employees and uniformly applied their day-rate pay practice to Plaintiff and the Collective Members.

89. The misclassification of Plaintiff and the Collective Members as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

90. Defendants applied this policy regardless of any alleged individualized factors such as job position, job duties, responsibilities, or geographic location.

91. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

92. Plaintiff demands a trial by jury

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, Calyx Energy III, LLC and Riverside Midstream Water Resources, LLC, as follows:

    a. For an Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA

       claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.   For judgment pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff and the Collective Members for liquidated damages equal in amount to their unpaid compensation;

c.   For an Order awarding Plaintiff and the Collective Members their reasonable attorneys' fees and costs as provided by the FLSA;

d.   For an Order awarding pre- and post-judgment interest; and

e.   For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Philip Bohrer
Philip Bohrer
phil@bohrerbrady.com
BOHRER BRADY, LLC
8712 Jefferson Highway, Ste. B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Fax: (225) 231-7000